AULTMAN COMPANY v. JOHN MOSLOSKI and Another.

June 14, 1899.

Nos. 11,622—(117).

**Witness—Defects in Steam Engine—Competency of Farmer to Prove Defects.**

A farmer who was licensed to run a steam threshing-machine engine testified to certain defects in the engine, discovered in operating it. He was not a mechanical engineer, and it did not appear that he knew whether the defects could be remedied, and, if so, the cost of remedying the same. *Held*, he was not competent to prove that the engine was

worthless, and his evidence will not sustain a verdict finding that by reason of the defects the engine was damaged to the extent of $1,000.

Action in the district court for Martin county to recover $731.55 and interest on three promissory notes made by defendant John Mosloski, payment of which was guarantied by defendant Katy Mosloski. Defendant John Mosloski set up a counterclaim for $2,500. The case was tried before Quinn, J., and a jury, which rendered a verdict in favor of defendants, and assessed the damages of defendant John Mosloski at $1,000. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*Voreis & Mathwig,* for appellant.

*H. H. Dunn,* for respondents.

CANTY, J.

On July 25, 1896, the defendant John Mosloski bought of plaintiff a 16-horse power engine, which was delivered to him August 3, of that year. Thereafter, until September 25, he used it in threshing, in connection with a separator which he then owned, and on the latter date the separator was burned. Thereupon he purchased from plaintiff a new separator and stacker, which were delivered to him on or about October 5 of that year, and he used the same in connection with the engine during the remainder of the threshing season of that year, and during the threshing season of the year 1897. The price of the engine was $1,745. Mosloski traded for it an old engine and separator owned by him, and valued at $750, and agreed to pay the sum of $1,000 besides for the new engine. For the new separator and stacker he agreed to pay $775. For these last two sums he gave to plaintiff his promissory notes, falling due thereafter at various dates. In November, 1897, this action was brought on several of these notes, which were then due, aggregating $731, and on a written guaranty of payment of the notes, made by the defendant Katy Mosloski. The defendants, in their answer, set up an oral warranty of the engine and another of the separator and stacker, made by plaintiff to John Mosloski, and breaches of these warranties. On the trial the jury found for defendants, and awarded John Mosloski the sum of $1,000 damages. From an order denying a new trial, plaintiff appeals.

We are of the opinion that the damages are wholly excessive and unreasonable, and that for this reason there should be a new trial as to both defendants. It will be observed that the jury awarded damages to the amount of more than $1,730 for the breach of said warranties. John Mosloski and several of his witnesses testified that the separator and stacker were each constantly getting out of order, could not be made to do good work, and were wholly worthless. We cannot take the time or space to recite this evidence in detail. The evidence that the separator and stacker were wholly worthless is very unsatisfactory. The testimony was all that of farmers and farm hands who ran a threshing machine during the threshing season each year. No mechanical expert in that line ever examined the machine while in operation, or testified as to the nature or extent of the alleged defects, or as to whether the same could be remedied, or, if so, the cost of remedying the same. But conceding, without deciding, that the evidence was sufficient to sustain a finding that the separator and stacker were worthless, we are of the opinion that the evidence will not sustain a finding that the engine was as nearly worthless as the jury must have found it to be. As we have seen, the jury must have allowed about $1,000 damages for breach of warranty of the engine.

Mosloski and several of his witnesses testified that the ball and socket joint which connects the boiler and the front axle together (and on which one end of the boiler rests) were defective, and broke in passing over a dead furrow in moving the engine. But this was remedied by procuring from plaintiff a new casting, the cost of which to Mosloski does not appear. They also testified that one end of the wooden jacket which covered the boiler extended slightly out over the fire box, and caught fire on two or three different occasions. But it does not appear that this could not have been remedied at small cost by cutting off a part of the end of the wooden jacket. They also testified that there was too much weight on the front axle of the engine, and that the fire box had such a draft that the straw used for fuel would be drawn up through the flues and the smokestack. They also testified that the pump, injector, and lubricator did not work; that the eccentric got out of order; that the cylinder got dry, and they had to stop the engine to oil a

certain place. No expert mechanical engineer examined the engine, or testified as to the character of its defects, or as to whether or not they could be remedied, and, if so, the cost of remedying the same.

True, Mosloski and one of his witnesses each testified that he was licensed to run a threshing-machine engine, but that does not imply that he knew anything about repairing or altering a defective engine; and neither of them testified that he did. Mosloski testified that the engine is worthless. He is a farmer, and it is evident from his evidence that he knew very little about such a steam engine, either theoretically or practically. Such an engine is a complicated machine, and it requires considerable mechanical skill to determine the extent and character of the defects which may exist in it. Mosloski may have carried a watch for years, and used and wound it every day, and, if it got out of order, he would be nearly as competent to testify to the character and extent of the defects in the watch as he was to testify to the character and extent of the defects in this engine.

We do not wish to be understood as holding that the evidence given by these witnesses was not competent to prove some amount of damage to the engine. The mere fact that the defects existed was evidence of damage to some extent, but not to the extent of $1,000, without proof that it would cost that amount to remedy these defects, or that they could not be remedied; and these witnesses were not competent to prove any of these facts. If the warranty proved by defendants required plaintiff to remedy the defects in the engine on being notified that such defects existed, and such notice was given and plaintiff failed to remedy them, it might be evidence that the defects could not be remedied, and from this it might appear that the machine was worthless. But the warranty proved by defendants did not require any such notice, or give plaintiff any opportunity to remedy the defects. It was, by its terms, simply a warranty that the engine was made of good material, and would work well. We find no other error in the record.

The order appealed from is reversed, and a new trial granted.